JOHN B. HAIGHT, as Executor and Trustee under the Last Will and Testament of UNDERHILL L. PURDY, Deceased, Respondent, v. SULLIVAN M. PINE, as Administrator, etc., of JAMES PINE, Deceased, Appellant.

*Will — a fee not cut down to a life estate by a subsequent interpretative clause — the opinion of the testatrix as to the legal effect of prior words not controlling — intestacy not favored — effect of a power of sale.*

Where an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate.

The will of Sarah Purdy, the wife of Underhill L. Purdy, who was also her executor, first bequeathed to Sarah Pine some silverware and wearing apparel; second, authorized her executor to sell all her real estate, to invest the proceeds to the amount of $10,000 on bond and mortgage, the interest of which he was to pay to himself during life and on his death the sum of $10,000, " or so much thereof as may be invested as aforesaid," was to be paid to her brother, James Pine, absolutely; third, devised and bequeathed to her husband and executor all her estate, both real and personal (except what had been given to Sarah Pine), " subject, however, and I hereby expressly charge the above devise of my real estate to my husband, except so far as the same may be conveyed as above provided, with the payment of the sum of $10,000, subject to be

diminished to the amount invested as directed by the preceding clause of my will, to my brother, James Pine, to whom I give and bequeath the same, to him, his heirs and assigns forever, payment thereof without interest to be made within one year after the decease of my said husband.

" By the above provision it is intended to give my husband the use of all my estate, both real and personal (except the bequest to Sarah Pine), during his natural life, with full power to sell and convey my real estate, or any part or parts thereof, at one or more times, free from all incumbrances, and to give to my brother, James Pine, $10,000 without interest, to be paid in one year from the death of my husband, payment thereof to be secured as above expressed in the two preceding clauses of this my will."

*Held*, that the paragraph last quoted did not reduce the estate in fee given to the husband of the testatrix by the first part of the "third" item of the will, to an estate for life;

That the language of the alleged restrictive clause was interpretative and not declaratory;

That the intention of the testatrix must be discovered from the language which she employed, and not from her expressions of opinion respecting the meaning of words employed in an antecedent paragraph of the will;

That the law preferred a construction of a will which would prevent partial intestacy to one which would permit it;

That the insertion of a power of sale did not alter the construction given, because, if there was a sale of the land under the second clause of the will, the husband in that event only took the surplus over and above the legacy of $10,000 given to James Pine.

APPEAL by the defendant, Sullivan M. Pine, as administrator, etc., of James Pine, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 23d day of December, 1895, upon the decision of the court rendered after a trial at the Westchester Special Term.

*Owen T. Coffin*, for the appellant.

*Frederick W. Sherman*, for the respondent.

Judgment affirmed, with costs, on the opinion of the Special Term.

All concurred.

The opinion of the Special Term was as follows:

DYKMAN, J.:

It is the object of this action to procure the transfer to the plaintiff of certain stock of the Eagle Fire Company.

The stock was originally owned by Sarah Purdy. The plaintiff is the executor of Underhill L. Purdy, and claims the stock as such by virtue of a gift to his testator by his wife, Sarah Purdy, in her last will and testament.

The defendant, Sullivan M. Pine, as administrator of James Pine, deceased, claims that the stock belonged to his intestate by virtue of the same will of Sarah Purdy.

The controversy must, therefore, be determined by a construction of her will. It is to be remarked here that the claim of the defendant is not that the stock in question was given to his intestate by the will of Sarah Purdy, but that she made no final disposition of the same, and that James Pine took the same, as the sole heir and next of kin of the testator, who was his sister. His kinship was properly established. He claimed "kindred there and had his claim allowed."

The will in question is as follows :

"*First.* I give and bequeath to my niece, Sarah Pine, daughter of my brother, James Pine, the remainder of my silver set and plated ware, and all my wearing apparel.

"*Second.* I hereby authorize and empower my executor hereinafter named, to bargain, sell or convey the whole or any part of my real estate, and at such time or times, and for such prices, and in such quantities as to him shall seem proper, and to invest the moneys to arise from such sale or sales, to the amount of ten thousand dollars on bond and mortgage of real estate, the interest thereof to be paid to my husband during his natural life, and on his death the said sum of ten thousand dollars, or so much thereof as may be invested as aforesaid, shall be paid to my brother, James Pine, to whom I give and bequeath the same, to him, his heirs and assigns forever.

"*Third.* I give, devise and bequeath to my husband, Underhill L. Purdy, and to him, his heirs and assigns forever, all my estate, both real and personal (except that above given to my niece, Sarah Pine), subject, however, and I hereby expressly charge the above

devise of my real estate to my husband, except so far as the same may be conveyed as above provided, with the payment of the sum of ten thousand dollars, subject to be diminished to the amount invested as directed by the preceding clause of my will, to my brother, James Pine, to whom I give and bequeath the same, to him, his heirs and assigns forever, payment thereof without interest to be made within one year after the decease of my said husband.

" By the above provisions it is intended to give my husband the use of all my estate, both real and personal (except the bequest to Sarah Pine), during his natural life, with full power to sell and convey my real estate or any part or parts thereof at one or more times, free from all incumbrances, and to give to my brother, James Pine, ten thousand dollars, without interest, to be paid in one year from the death of my husband, payment thereof to be secured as above expressed in the two preceding clauses of this, my will.

"*Lastly.* I hereby nominate and constitute and appoint my husband, Underhill L. Purdy, sole executor of this, my last will and testament, hereby revoking all other or former wills by me made.

" In witness whereof, I have hereunto set my hand and seal this 31st day of March, one thousand eight hundred and seventy-four.

" [SEAL.]                              SARAH PURDY."

The scheme of the will of Sarah Purdy is this : Her property, real and personal, is given to her husband, Underhill L. Purdy except the specific articles given to Sarah Pine.

Her husband was constituted the executor, and authorized to sell the real property.   If he did sell it he gave a clear title, but was to invest the money to arise from the sale to the amount of $10,000 on bond and mortgage upon real property, and pay the interest to himself during his natural life.

At his death the sum of $10,000, or so much thereof as may have been invested, was to be paid to James Pine, to whom the sum was bequeathed absolutely.   If the real property was not sold then the same was charged with the sum of $10,000 given to James Pine, which would not be diminished in that event, because no amount would be invested as directed by the second clause of the will.

The scheme would be apparent and easily executed and no question would arise except for the last clause of the third paragraph in the will, which reads as follows :

" I give, devise and bequeath unto my husband, Underhill L. Purdy, and to him, his heirs and assigns forever, all my estate, both real and personal (except that above given to my niece, Sarah Pine), subject, however, and I hereby expressly charge the above devise of my real estate to my husband, except so far as the same may be conveyed as above provided, with the ·payment of the sum of · ten thousand dollars, subject to be diminished to the amount invested as directed by the preceding clause of my will, to my brother, James Pine, to whom I give and bequeath the same, to him, his heirs and assigns forever, payment thereof without interest to be made within one year after the decease of my said husband.

" By the above ·provisions it is intended to give my husband the use of all my estate, both real and personal (except the bequest to Sarah Pine), during his natural life, with full power to sell and convey my real estate or any part or parts thereof at one or more times, free from all incumbrances, and to give to my brother, James Pine, ten thousand dollars, without interest, to be paid in one year from the death of my husband, payment thereof to be secured as above expressed in the two preceding clauses of this, my will."

Does that clause reduce the estate in fee absolute which was given to the husband of the testatrix by the first part of the third paragraph, to an estate for his life only ?

The controlling rule of law is this : " When an estate is given in one part of a will, in clear and decisive terms, such estate cannot be taken away, or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate." (*Roseboom* v. *Roseboom*, 81 N. Y. 356.)

Do the subsequent words in this will fulfill the requirements of that rule ?

It cannot be said with propriety that they are as clear and decisive as the words of the clause which gave the estate in fee. In fact the clause contains no words of gift of any kind ; it simply declares what the antecedent provisions were intended to give. It does not declare what the testatrix intended to give. It states no intention of testatrix to give anything. It really amounts to no more than saying the husband shall not be turned out of possession by the enforcement of the legacy of $10,000 to Pine. If he fails to sell the land under the first clause of the will, in that event the legacy was

charged upon the land and was doubtless the incumbrance referred to in the last clause.

Without a postponement of the payment of that legacy so charged the land might have been sold to pay it, and the husband thus deprived of the possession during his life, and the wife desired to prevent that and provide against it, and leave the husband in possession during his life in any event.

That at least is the plausible theory upon which to account for the insertion of the clause after the absolute gift.

The intention of the testatrix is to be gathered from the language of the will, unless it be so obscure as to require extrinsic aid, and in this case the language is plain and free from obscurity. Moreover, the testatrix does not say in the last clause that by the preceding provision she intends to give, etc., but she says that by the above language it is intended to give, etc., thus making the language interpretative instead of declaratory.

That effort cannot change or limit the natural interpretation to be given to the language employed in the preceding portion of the will.

It stated that it was intended by the provision to give the husband power to sell and convey the real property, so there is no repugnance. There is no substituted gift and no intention expressed to make any. Neither can any such gift be implied. The last clause must be viewed as an expression of the opinion of the testatrix respecting the meaning of the words employed in the antecedent paragraph of the will.

Such opinion, however, cannot control the court in the construction of the will. We must find the intention of the testatrix in the language she employed, and, guided by that light, the discovery is readily made. A construction of this last clause which would allow it to cut down the former gift of an absolute estate and ownership to an estate for life, would convict the testatrix of an intention to die intestate as to all her property except the creation of a life estate therein.

There is no evidence of any such intention, but contrariwise her intention is clearly expressed to give her husband all of her property absolutely.

"The law prefers the construction of a will which will prevent partial intestacy to one that will permit it." (*Vernon* v. *Vernon,* 53 N. Y. 361.)

The insertion of a power of sale in this will does not militate against the construction here given to it, because if there was a sale of the land under the second clause of the will the husband did not take it.

In that event he only took the surplus above the $10,000 legacy given to James Pine.

My conclusion is that the subsequent clause under consideration cannot be permitted to cut down or affect the primary devise, and the following adjudicated cases are in favor of that view : *Roseboom* v. *Roseboom* (81 N. Y. 356); *Campbell* v. *Beaumont* (91 id. 465).

The plaintiff must have judgment for the relief demanded in his complaint, with costs.